**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| TOMMY JOE JEFFERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-603-B (BH) |
| | § | |
| WARDEN C. KEETON, et al., | § | |
| | § | |
| Defendant. | § | Referred Motion |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b) and the District Court's *Order Referring Motion*, issued April 15, 2008, this matter was referred to the undersigned United States Magistrate Judge for hearing, if necessary, and for the issuance of proposed findings and recommendation to the District Court. Before the Court are the following:

(1) *Defendants Joshi and Dearon's Motion for Summary Judgment* ("Mot."), filed April 14, 2008;

(2) *Brief in Support of Defendants Joshi and Dearon's Motion for Summary Judgment* ("Mot. Br."), filed April 14, 2008; and

(3) *Appendix to Defendants' Motion for Summary Judgment* ("App."), filed April 14, 2008.

Plaintiff did not file a response. Having reviewed the pertinent filings and the applicable law, the Court recommends that Defendants' motion for summary judgment be **GRANTED**.

## I. BACKGROUND

Plaintiff Tommy Joe Jefferson ("Plaintiff"), who proceeds *pro se* and *in forma pauperis* in this matter, is currently incarcerated in the Terrell Unit of the Texas Department of Criminal Justice ("TDCJ"). Prior to his incarceration in the Terrell Unit, he was held in the Dawson State Jail in

- 1 -

Dallas, Texas, on a parole revocation. *Complaint*, *Jefferson v. Keeton, et al.*, No. 3:07-CV-603-B, at 3 (N.D. Tex. filed Apr. 2, 2007) (hereinafter, "Compl."); *Answers to Magistrate Judge's Questionnaire*, docket no. 12, at 11 (filed June 19, 2007) (hereinafter, "MJQ").

Plaintiff suffers from arthritis, chronic sinus congestion, and hypertension. (Mot. App. Ex. A, at 1). While incarcerated in the Dawson State Jail on December 26, 2006, Plaintiff submitted a sick call request to see a doctor and for a refill of his medications. (Mot. App. Ex. D, at 72). On December 28, defendant nurse Michael Dearon issued Plaintiff a medical pass for ibuprofen and Chlor-trimeton (an antihistamine), both to be taken as needed for Plaintiff's complaints of arthritis and chronic sinus congestion. (*Id*. at 40-41). Plaintiff submitted another sick call request on January 3, 2004, seeking the same relief and stating that he had not received his pain medication and the antihistamine was ineffective. (*Id*. at 71). Nurse Telesia Robertson examined Plaintiff the following day and issued another medical pass for more ibuprofen and Chlor-trimeton to be taken as needed. (*Id*. at 32-34, 39).

Plaintiff submitted a third sick call request on January 10, 2007, requesting more pain medication and a renewal of his prescription blood pressure medication. (*Id*. at 70). On the same day, he submitted a formal "Step 1 Offender Grievance Form" to Dawson State Jail officials requesting to see a doctor for renewal of his pain and high blood pressure medication and for treatment of a sinus condition. (Compl. at 10; *see* MJQ at 5). On January 12, 2007, a nurse reviewed Plaintiff's sick call request and sent his chart to a medical provider for a refill of his blood pressure medication. (Mot. App. Ex. D, at 70; Compl. at 11).

Plaintiff submitted sick call requests on January 18 and on January 26, 2007. (Mot. App. Ex. D, at 68-69). Defendant Dearon examined Plaintiff in response to his January 18th request but deferred refilling Plaintiff's medications because his chart had been sent to a medical provider for

a review. (*Id*. at 15). Plaintiff's sick call request from January 26 demanded to "see the doctor not the nurse." (*Id*. at 68). Three days later, on January 29, Dr. Barry Raff, M.D., examined Plaintiff for complaints of arthritis, a peptic ulcer, and sinus congestion. (*Id*. at 22-24). Dr. Raff noted that Plaintiff had a history of poor compliance and prescribed Motrin (600 milligrams) for Plaintiff's arthritis. (*Id*. at 22). He did not prescribe a higher strength due to Plaintiff's hypertension and history of a peptic ulcer. *Id*. Dr. Raff did not prescribe anything for Plaintiff's peptic ulcer because he presented no signs of an active ulcer. (*Id*. at 23). Dr. Raff also diagnosed Plaintiff with "minimal rhinitis" and prescribed Chlor-trimeton. (*Id*. at 24).

Meanwhile, on January 25, 2007, the Step 1 grievance Plaintiff submitted on January 10 was denied because Plaintiff saw a nurse and his medication chart had been sent to a medical provider for review. (Compl. at 11). Plaintiff appealed this denial on January 29, 2007, in a Step 2 grievance. (Compl. at 8-9). Plaintiff alleged in his appeal that his medical care was inadequate because he went without his blood pressure medication for approximately two weeks and that he still had not received his arthritis pain medication. (*Id*. at 8). He did not say anything about his sinus condition. *See id*. The appellate decision issued on February 7, 2007, stated that the Step 1 medical response inadequately addressed Plaintiff's medication concerns and that the issue was submitted for "further university review." (*Id*. at 9). The appellate decision also informed Plaintiff that "in order to expedite resolution of medical complaints, [he was] encouraged to utilize the facility's medical complaints process by contacting the facility medical complaints coordinator before filing a grievance." *Id*.

In February and March of 2007, Plaintiff received medical care on numerous occasions. Of note were his visits on February 9, February 22, March 12, and March 14. On February 9, after initially failing to report for a blood pressure check, (Mot. App. Ex. C, at 1), a nurse practitioner

took Plaintiff's blood pressure and found that it was still high. (Mot. App. Ex. D, at 9). Plaintiff told the nurse practitioner that he took his blood pressure medication daily, but a review of his dispensed medications showed that he only took 9 pills out of the 30 that he should have taken. *Id.* To remedy his noncompliance, Nurse Brenda Johnson required Plaintiff to go to the medical window to obtain his daily medication. *Id.* On February 22, Defendant Dearon refused to give Plaintiff Chlor-trimeton because of his elevated blood pressure and advised Plaintiff that decongestants can elevate blood pressure. (*Id.* at 14). Defendant Dearon again refused to give Plaintiff decongestants on March 12, 2007, and referred Plaintiff to a doctor for his hypertension and sinus congestion. (*Id.* at 13). On March 14, 2007, Defendant Subhash Joshi, M.D., examined Plaintiff. (*Id.* at 21). Defendant Joshi noted that Plaintiff's hypertension was inadequately controlled with his current medications and adjusted Plaintiff's prescribed medications. *Id.* Defendant Joshi also prescribed ibuprofen. *Id.* The remaining medical records through mid-August of 2007 show numerous requests for blood pressure checks, complaints about sinus congestion, and corresponding treatment from medical staff at Dawson State Jail. (*See* Mot. App. Ex. D and C).

Plaintiff filed the instant action on April 6, 2007. He alleges that Defendant Joshi and Defendant Dearon (collectively, "Defendants") did not do anything to treat his hypertension (Compl. at 3; MJQ at 3-4). He also alleges that Defendant Dearon failed to treat his sinus infection and refused to let him see a doctor about his complaints. (Compl. at 3; MJQ at 4). Defendants filed their motion for summary judgment, and the issue is ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claim and "articulate the precise manner in which that evidence supports [that] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Where, as here, the nonmovant fails to respond to the motion for summary judgment, such failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In addition, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002).

### III. 42 U.S.C. 1983

Defendants first move for summary judgment on Plaintiff's claims pursuant to 42 U.S.C. § 1983 that they violated his civil rights under the Eighth Amendment on grounds that he cannot proffer evidence of deliberate indifference to his medical needs.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Section 1983 reaches only those constitutional injuries caused by persons acting under color of state law. *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980).

A prisoner's treatment and his conditions of confinement are subject to scrutiny under the Eighth Amendment to the Constitution of the United States, which proscribes cruel and unusual punishments. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The amendment requires that conditions of confinement be humane, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care as well as take reasonable measures to guarantee their safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement absent a showing of "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* at 828, 834. To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety). Deliberate indifference "describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *id*. at 835, and it is "an extremely high standard to meet," *Domino*

*v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

An inmate may demonstrate deliberate indifference to his medical needs by showing that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs", *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985), such as delaying access to medical care and interfering with treatment once prescribed, *Estelle,* 429 U.S. at 105. *See e.g. Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). An incorrect diagnosis by prison medical personnel does not suffice to state a constitutional violation, however. *See id*. Likewise, the failure to alleviate a significant risk that the official should have perceived, but did not, also does not constitute a violation. *Farmer*, 511 U.S. at 838. Mere negligence or medical malpractice does not rise to the level of a constitutional violation, *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), nor does disagreement with a prescribed course of treatment, *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing cases).

In the instant case, Defendants contend that Plaintiff cannot show they violated his rights under the Eighth Amendment because he was treated on numerous occasions by various providers. (Mot. Br. at 4-5). In support of this assertion, they cite to the extensive medical record and an affidavit from Dr. Roy Reid, M.D., a physician for the University of Texas Medical Branch-Correctional Managed Care ("UTMB").[1] (*Id*. at 6-12) (citing Mot. App. Ex. A, C, D).

The medical record reflects that Plaintiff saw a nurse on seventeen occasions, a physician

---

[1] Defendants' compilation of Plaintiff's medical records and the clear citations to this evidence in the motion is extremely helpful.

on three, a physician's assistant once, and a nurse practitioner on two occasions. (Mot. App. Ex. A, at 2). Among these visits, Plaintiff saw Defendant Joshi once and Defendant Dearon four times. (Mot. App. Ex. D, at 13, 14, 15, 21, 40-41). Plaintiff received medications to treat his medical conditions although he often failed to take his prescription medications. (Mot. App. Ex. A, at 1-2). Plaintiff saw a doctor on January 29, 2007, after an examination by Defendant Dearon on January 18 and an explicit demand to "see the doctor not the nurse" on January 26. (Mot. App. Ex. D, at 15, 22-24, 68). Plaintiff also saw a doctor on March 14, 2007, two days after Defendant Dearon examined him. (*Id*. at 13, 21).

In his affidavit, Dr. Reid provides several opinions. First, he opines that Plaintiff suffers from the potentially serious medical condition of hypertension as well as arthritis and chronic sinus congestion; neither of the latter two are serious medical conditions. (Mot. App. Ex. A, at 1). Second, Plaintiff received appropriate medications for his medical conditions, such as prescription medications to lower blood pressure, ibuprofen for arthritis, and antihistamines for sinus congestion. (*Id*.; *see e.g.* Mot. App. Ex. D, at 9, 24, 40-41). Dr. Reid also opines that Plaintiff's hypertension was difficult to control because he did not always take his prescription blood pressure medication and he often failed to monitor his blood pressure on a regular basis. (Mot. App. Ex. A, at 1). An active ingredient in decongestants can raise blood pressure to unsafe levels in healthy persons and that the decision to withhold decongestants from Plaintiff, who suffers from hypertension, was "wise and well within the standard of care," in his opinion. (*Id*. at 2). Based on the medical record, Dr. Reid opines that the treatment provided to Plaintiff was timely, appropriate, and rendered in good faith. *Id*.

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial that Defendants were

deliberately indifferent to his need for medical care, thus violating his rights under the Eighth Amendment. *Celotex*, 477 U.S. at 324. Plaintiff did not respond to the instant motion for summary judgment and he is relegated to his sworn pleadings.[2] Plaintiff avers in his complaint that Defendants did not do anything to treat his hypertension and that Defendant Dearon refused to let him see a doctor. (Compl. at 3; MJQ at 3-4). In light of the medical record, Plaintiff's conclusory averments, without any supporting evidence, are insufficient to defeat a motion for summary judgment on his claims that Defendants did not do anything to treat his hypertension or that Defendant Dearon refused to let him see a doctor. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"); *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (same). Even viewing the evidence in the light most favorable to Plaintiff, the record does not show that Defendants were deliberately indifferent to his medical needs, but that he was provided with medical care as he requested it. *See Hernandez v. Velasquez,* 522 F.3d 556, 562 (5th Cir. 2008).

Plaintiff also raises an allegation of an Eighth Amendment violation in the way Defendants treated his hypertension and sinus condition. With regards to Defendant Joshi, Plaintiff avers that Defendant Joshi disregarded his requests for clonidine, a prescription medication used to treat hypertension. (MJQ at 3). When Plaintiff saw Defendant Joshi on March 14, 2007, Defendant Joshi noted that Plaintiff's hypertension was inadequately controlled with the current medications and

---

[2]As noted in Part II, *supra*, a summary judgment nonmovant who does not respond to the motion is relegated to his pleadings, which are typically unsworn and do not constitute summary judgment evidence. *Bookman*, 945 F. Supp. at 1002. In this case, however, Plaintiff signed under penalty of perjury both his complaint and Answers to the Magistrate Judge's Questionnaire. (*See* Compl. at 5; MJQ at 12). Because Plaintiff's pleadings were submitted under the penalty of perjury, they may be considered as competent summary judgment evidence. *See Barnes v. Johnson*, 2006 WL 3102343, at *1 (5th Cir. 2006), slip copy (verified complaint may serve as competent summary judgment evidence).

adjusted the prescribed medications. (*Id*. at 21). Even assuming that Plaintiff received clonidine in the past and that clonidine would be an appropriate course of treatment at the time he saw Defendant Joshi, a disagreement with a prescribed course of treatment does not constitute a violation of the Eighth Amendment. *Gobert*, 463 F.3d at 346. Likewise, Plaintiff's complaint about Defendant Dearon's decision not to prescribe Chlor-trimeton amounts to a disagreement with a prescribed course of treatment and does not constitute a violation of the Eighth Amendment. *Id*.; *see* Mot. App. Ex. D, at 13-15 (declining to prescribe decongestants). Moreover, according to Dr. Reid, Defendant Dearon's decision not to prescribe decongestants was "wise and within the standard" of care due to the ability of decongestants to raise blood pressure to unsafe levels in healthy persons; such an ability could pose a serious health risk to individuals with hypertension, like Plaintiff. (*See* Mot. App. Ex. A, at 2).

In conclusion, Plaintiff has not met his summary judgment burden to show that the evidence is sufficient to support a resolution of the factual issue in his favor on his claim that Defendants failed to provide medical treatment. *Anderson*, 477 U.S. at 249. Plaintiff's disagreement with the prescribed course of treatment fails to raise a constitutional violation. Accordingly, the Court recommends dismissal of Plaintiff's claims against Defendants.[3]

## IV. CONCLUSION

For the reasons stated above, the Court recommends that *Defendants Joshi and Dearon's Motion for Summary Judgment* be **GRANTED**. All of Plaintiff's claims arising under 42 U.S.C. § 1983 against Defendant Joshi and Defendant Dearon should be **DISMISSED**, with prejudice.

---

[3]Because the Court finds that dismissal should be granted on Plaintiff's inability to meet his summary judgment burden for his claim of deliberate indifference, the Court does not reach Defendants' alternative grounds for summary judgment.

**SO RECOMMENDED** on this 11th day of June, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE